**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| LINDA L. CLEMENT,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV-08-2009-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Linda L. Clement, which challenges the Social Security Administration's decision to deny benefits. (Dkt. # 16.) For the reasons set forth below, the Court affirms that decision.

**BACKGROUND**

On April 13, 2005, Plaintiff applied for disability insurance benefits, alleging a disability onset date of July 13, 2004. (R. at 47.) Plaintiff's date last insured ("DLI") for disability insurance benefits was September 30, 2005. (*Id.*) Plaintiff's claim was denied both initially and upon reconsideration. (R. at 43-46; R. at 39-41.) Plaintiff then appealed to an Administrative Law Judge ("ALJ"). (R. at 30.) The ALJ conducted a hearing on the matter on December 6, 2006. (R. at 434-83.)

In evaluating whether Plaintiff was disabled, the ALJ undertook the five-step sequential evaluation for determining disability.[1] (R. at 12-21.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 17.) At step two, the ALJ determined that Plaintiff suffered from the severe impairments of "disorders of the back and neck, arthritis, mild obesity with recent improvement, and hypothyroidism, currently stable." (*Id.*) At step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the Social Security Administration's listed impairments. (*Id.*)

At that point, the ALJ made a determination of Plaintiff's residual functional capacity ("RFC").[2] The ALJ concluded that Plaintiff could perform a range of light work. (*Id.*) The ALJ concluded that Plaintiff could sit, stand, and walk for six hours per day, and had the

---

[1] The five-step sequential evaluation of disability is set out in 20 C.F.R. § 404.1520 (governing disability insurance benefits) and 20 C.F.R. § 416.920 (governing supplemental security income benefits). Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

[2] RFC is the most a claimant can do despite the limitations caused by his impairments. *See* S.S.R. 96-8p (July 2, 1996).

capability to lift and carry ten pounds frequently and twenty pounds occasionally. (*Id.*) The ALJ further concluded that Plaintiff had postural limitations of no more than occasional bending, crouching, crawling, or climbing; needed to avoid concentrations of dust, fumes, and gases; and needed to avoid temperature extremes. (*Id.*) The ALJ thus determined at step four that Plaintiff retained the RFC to perform her past relevant work as a real estate agent, real estate broker, real estate instructor, and administrative assistant. (R. at 21.) The ALJ did not reach step five. (*See id.*) Given this analysis, the ALJ concluded that Plaintiff was not disabled. (*Id.*)

The Appeals Council declined to review the decision. (R. at 4-6.) Plaintiff filed the complaint underlying this action on November 3, 2008, seeking this Court's review of the ALJ's denial of benefits.[3] (Dkt. # 1.) The case is now fully briefed before this Court. (Dkt. ## 16, 18, 19.)

## DISCUSSION

**I. Standard of Review**

A reviewing federal court will only address the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits only if that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* (quotation omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

However, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

---

[3] Plaintiff was authorized to file this action by 42 U.S.C. § 405(g) (2004) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .").

1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

**II.  Analysis**

Plaintiff argues that the ALJ erred by: (A) improperly rejecting the opinion of Dr. Bhalla, a treating physician (Dkt. # 16 at 16-22), (B) improperly rejecting Plaintiff's subjective complaint testimony (*id.* at 22-24), and (C) not awarding benefits based on the vocational expert's testimony (*id.* at 24-25). The Court will address each argument in turn.

**A.  Treating Physician Testimony**

Plaintiff's first argument is that the ALJ improperly rejected the opinion of her treating physician, Dr. Bhalla. "The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)). Such an opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2). If the opinion is not well-supported by such techniques, or is inconsistent with other substantial evidence in the record, then the opinion will be weighed in light of several factors: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability by explanation and reference to relevant evidence, (4) consistency with the record as a whole, (5) specialization, and (6) any other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(d); 20 C.F.R.§ 416.927(d).

If the treating physician's opinion is not contradicted by the opinion of another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Likewise, the treating

- 4 -

physician's ultimate conclusions may only be rejected for clear and convincing reasons supported by substantial evidence. *Id.* If the treating physician's opinion is contradicted by the opinion of another physician, it may be rejected upon specific and legitimate reasons supported by substantial evidence in the record. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey*, 849 F.2d at 421 (quotation omitted).

An examining physician's opinion can, in and of itself, constitute substantial evidence to reject the opinion of a treating physician if the examining physician's opinion is based on independent clinical findings that differ from the findings of the treating physician. *Orn*, 495 F.3d at 632. If the examining physician relies on the same findings as the treating physician, and differs only in his conclusions, then the examining physician's opinion cannot inherently be substantial evidence. *Id.* However, the "substantial evidence" threshold necessary to reject the opinion of a treating physician can be reached by the opinion of even a non-examining physician in concert with an abundance of evidence in the record. *See Lester*, 81 F.3d at 831.

In this case, Dr. Bhalla completed a residual functional capacity questionnaire discussing Plaintiff's impairments. (R. at 424-28.) In the questionnaire, Dr. Bhalla diagnosed Plaintiff as having rheumatoid arthritis, osteoarthritis of the hand, and degenerative disc disease, with a prognosis of "chronic disease." (R. at 424.) Dr. Bhalla provided that Plaintiff's symptoms included pain, swelling of the joints, and stiffness, and that the pain was "severe during flare ups," which are unpredictable. (*Id.*) Dr. Bhalla listed joint warmth, redness, swelling, and a reduced range of motion in the hands as Plaintiff's positive objective signs. (*Id.*) Dr. Bhalla further stated that, although Plaintiff's experience of pain "often" was severe enough to interfere with her attention and concentration, Plaintiff was still "capable of [working in] low stress jobs." (R. at 425.) Dr. Bhalla then estimated that Plaintiff could sit for one hour at a time before needing to stand up, could stand for twenty minutes at a time before needing to sit down, and could sit and stand in total for less

than two hours in an eight-hour workday. (R. at 426.) Dr. Bhalla opined that Plaintiff could lift and carry up to twenty pounds occasionally, but nevertheless had significant limitations in repetitive reaching, handling, and fingering. (R. at 427-28.) Dr. Bhalla concluded by estimating that Plaintiff would miss more than four days of work per month as a result of her impairments. (R. at 428.)

The ALJ explained Dr. Bhalla's opinion in great detail in his decision order, recapitulating essentially all of what appears in the RFC questionnaire. (R. at 20.) The ALJ gave Dr. Bhalla's opinion some weight, but he ultimately concluded that it was not entitled to greater weight than that of other physicians. (*Id.*) The ALJ so reasoned because Dr. Bhalla failed to substantiate the functional restrictions he assigned to Plaintiff, because Dr. Bhalla's own treatment notes were inconsistent with the limitations he imposed on Plaintiff's ability to use her fingers, and because the greater objective record did not elsewhere suggest such limitations. (R. at 20-21.)

The ALJ's reasoning in this regard was not erroneous. The RFC questionnaire asked Dr. Bhalla to explain how long during a workday Plaintiff would be able to use her hands, fingers, and arms in various activities, but Dr. Bhalla declined to provide such supporting information. (R. at 428.) Dr. Bhalla also declined to provide requested specifying information on whether Plaintiff would need to take breaks or how far Plaintiff could walk without experiencing severe pain. (R. at 426-27.) Finally, when asked to "explain the reasons for [his] conclusion" regarding how much work stress Plaintiff could tolerate, Dr. Bhalla again provided no explanation. (R. at 425.) The RFC questionnaire is otherwise just a checklist with little to no explanation even requested. (*See* R. at 424-28.) The ALJ's conclusion that Dr. Bhalla "failed to substantiate the functional restrictions he assigned [Plaintiff]" (R. at 20) is therefore reasonable.

The record likewise supports the ALJ's conclusion that the limited treatment notes from Dr. Bhalla were inconsistent with the limitations he provided in the RFC questionnaire. As the ALJ discussed, although Plaintiff reported joint swelling, Dr. Bhalla's treatment notes report that there was no swelling of the fingers and joints. (R. at 401, 402, 404, 405; *see also*

R. at 407-09, 413-15.) The notes also report the general absence of symptoms, including neurological symptoms, and that the neurological system was "normal." (*See id.*) Thus, the ALJ's conclusion that the treatment notes did not fully support Dr. Bhalla's conclusion in the RFC questionnaire was reasonable.

So too was it reasonable for the ALJ to conclude that the opinions of other doctors were entitled to greater weight than Dr. Bhalla's opinion. (R. at 20.) For instance, the ALJ gave greater weight to the opinion of Dr. Fernando, a state agency examining physician. (*See id.*) Dr. Fernando attested that Plaintiff could lift up to twenty pounds occasionally and up to ten pounds frequently, and could stand and/or walk for six to eight hours in an eight-hour workday. (R. at 130.) Dr. Fernando further explained that Plaintiff had no limitations in sitting, but did need to alternate sitting and standing every forty-five minutes. (R. at 131.) Dr. Fernando also noted that Plaintiff had limitations in climbing, balancing, stooping, kneeling, crouching, and crawling, but he specifically observed that Plaintiff had no restrictions in reaching, handling, fingering, or feeling. (*Id.*) Dr. Fernando supported his conclusions with a detailed examination report, including a questionnaire specifically devoted to clarifying Plaintiff's manipulative abilities (reaching, handling, fingering, and feeling). (R. at 120-29.)

Dr. Fernando's opinion was essentially the same as the opinions of the state agency reviewing physicians. (*See* R. at 110-18, 176-83.) They each testified that Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently, that she could stand and/or walk for about six hours in an eight-hour workday, and that she could sit for about six hours in an eight-hour workday. (R. at 112, 177.) The state agency physicians further testified that Plaintiff had no limitations in her upper extremities, and both provided explanatory statements for their conclusions. (R. at 112-13, 177.) Although both provided some limitations on Plaintiff's ability to climb, balance, stoop, kneel, crouch, and crawl (R. at 113, 178), both likewise concluded that Plaintiff's manipulative abilities were either unlimited (R. at 114) or only somewhat limited (R. at 179).

Based on these factors, the ALJ had a proper basis on which to reject the opinion of Dr. Bhalla. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that it is appropriate to reject the opinion of a treating physician if it is inconsistent with other doctors' opinions, other evidence in the record, and the doctor's own treatment notes); *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming the ALJ's rejection of a treating physician's opinion because that opinion was "conclusory and unsubstantiated by relevant medical documentation") (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). The ALJ therefore did not err in affording Dr. Bhalla's opinion less weight than the opinions of the other physicians.

## B. Subjective Complaint Testimony

Plaintiff next argues that the ALJ erred by rejecting her subjective complaint testimony. "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (quoting 42 U.S.C. § 423(d)(5)(A) (2006)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on [the] lack of objective medical evidence to fully corroborate the alleged severity of [those symptoms]." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004). Rather, the ALJ must determine whether the impairment or combination of impairments "could reasonably be expected to produce [the] pain or other symptoms." *Batson*, 359 F.3d at 1196 (quotation omitted). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ may consider "at least" the following factors when weighing the claimant's credibility:

> [the] claimant's reputation for truthfulness, inconsistencies either in [the] claimant's testimony or between her testimony and her conduct, [the] claimant's daily activities, her work record, and testimony from physicians and third parties

- 8 -

> concerning the nature, severity, and effect of the symptoms of which [the] claimant complains.

*Thomas*, 278 F.3d at 958-59 (internal quotations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Id.* at 958.

In this case, Plaintiff testified that she suffered from pain and swelling in her legs and knees, specifically the left leg and knee (R. at 456), stiffness and aches in her back (R. at 457), and pain in her hands making it difficult to grip and squeeze (R. at 461). Plaintiff testified that her pain interferes with a variety of different activities, including work-related activities, and that her medication dulls her concentration. (R. at 455-70.)

The ALJ thoroughly summarized Plaintiff's subjective complaint testimony. (R. at 18.) The ALJ agreed that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms, but the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (*Id.*) The ALJ based this conclusion on the following facts: (1) Plaintiff had been able to tolerate a trip involving frequently getting into and out of a vehicle and climbing steps (R. at 145); (2) Plaintiff made use of only over-the-counter pain medication like Advil and Ibuprofen (R. at 145, 412); (3) Plaintiff's knee complaints were assessed as "mild" and Plaintiff's treating physician did not prescribe medication for them (R. at 140); (4) after just two physical therapy sessions, Plaintiff reported complete relief of thoracic/lumbar pain (R. at 393); (5) Plaintiff has made three long-distance trips from Arizona to Pennsylvania and back since July of 2004, both driving and flying (R. at 470); (6) Plaintiff does water aerobics two hours every day and occasionally volunteers as an assistant for additional water exercise classes (R. at 78, 471); (7) Plaintiff drives a car and a golf cart regularly (R. at 471); (8) Plaintiff was sewing, crocheting, using small tools, and cutting glass in 2004-05, despite her allegations of disabling hand pain (R. at 78, 452-54); (9) Plaintiff is independent at home, does light cleaning, fixes her own meals, and uses the computer (R. at 76, 472-73); and (10) Plaintiff requires no ambulatory devices, despite her allegations of

disabling lower back, leg, and sciatic pain (R. at 471). The ALJ also relied on a variety of medical evidence regarding Plaintiff's impairments. (R. at 19-20.) For instance, the ALJ pointed out that Plaintiff's mild median wrist neuropathies, as well as her neck complaints, improved with a short course of physical therapy. (R. at 356-59.) Plaintiff was recommended for only non-surgical treatment (R. at 269), and although various MRIs and x-rays did show degenerative joint disease of the lumbar spine, progress notes indicated normal gait and station, including heal/toe and tandem walking, normal alignment and mobility of the head and neck, and intact neurological sensation (R. at 289).

Plaintiff disputes three of the ALJ's points, arguing that: (1) her use of over-the-counter pain medication was simply part of a doctor-directed, conservative course of treatment; (2) Plaintiff had pain during the three trips to Pennsylvania and she stopped to stretch frequently; and (3) daily water aerobics, while a conservative treatment, is less vigorous than other forms of exercise, and thus is actually an indication that Plaintiff is disabled. Plaintiff does not challenge the notion that an ALJ may rely on such evidence in evaluating subjective complaint testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (affirming the ALJ's rejection of subjective complaint testimony where the ALJ interpreted evidence of long-distance travel as being inconsistent with claims of disabling pain); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming the ALJ's rejection of the claimant's subjective complaint testimony and relying on the fact that "the claimant has not been using [] strong Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain"); *Johnson*, 60 F.3d at 1434 (holding that a claimant's being "prescribed only 'conservative treatment'" suggested "a lower level of both pain and functional limitation," and thus affirming the ALJ's rejection of subjective complaint testimony). Plaintiff's argument, rather, is simply that the ALJ came to the wrong conclusion from the evidence. However, the ALJ's interpretation of the evidence was reasonable; taking long-distance trips, doing water aerobics daily, and using conservative pain medication all can be taken to suggest that Plaintiff is not totally disabled by her pain. Because the ALJ's conclusions on these factors were reasonable, and because Plaintiff has

- 10 -

not challenged the other factors on which the ALJ relied, this Court will not second-guess the ALJ's determination. *See Andrews*, 53 F.3d at 1039; *Batson*, 359 F.3d at 1198; *Matney*, 981 F.2d at 1019. There is no error on this point.

### C. Vocational Expert's Testimony

Plaintiff argues that, had the ALJ credited Dr. Bhalla's opinion and Plaintiff's subjective complaint testimony, the vocational expert's testimony would require a finding of disability. Because the ALJ did not err in declining to credit the evidence to which Plaintiff refers, there is no error on this point. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that an ALJ did not err in excluding properly-rejected limitations from hypothetical questions posed to the vocational expert).

**CONCLUSION**

The ALJ made no error of law and there is substantial evidence to support the ALJ's denial of benefits.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **TERMINATE** this action.

DATED this 9th day of June, 2009.

G. Murray Snow
United States District Judge